*Exhibit A*

Rental Agreement between:

**Velonie Blake-Williams, Alphonso Williams**

and

**Carmen Smith**

Dated: 01/27/2024

**Summary of Key Information**

| | | |
|---|---|---|
| **Property Address:** | 5529 Swanson RD, Ellenwood, GA 30294 | |
| **Lease Start Date:** | 01/27/2024 | See section 1.5 |
| **Lease End Date:** | 07/31/2024 | See section 1.5 |
| **Total Monthly Rent:** | $3,200.00 | See section 1.6 |
| Monthly Rent Amount: | $3,200.00 | See section 1.6 |
| Monthly Pet Rent: | N/A | See section 1.6 |
| **Pro-Rated Rent Amount:** | $516.13 | See section 1.10 |
| **Total Deposit(s):** | $3,200.00 | See section 1.8 |
| Security Deposit: | $3,200.00 | See section 1.8 |
| Pet Deposit: | N/A | See section 1.8 |
| Other Deposit: | N/A | See section 1.8 |
| **Move-in Fee Amount:** | N/A | See section 1.9 |
| **Late Fee:** | 10% if not paid by the 2nd. | See section 2.1 |

The above summary table is provided as a reference. The Agreement will control if there is a conflict.

# Georgia Residential Rental Agreement ("Agreement")

## 1. GENERAL INFORMATION

### 1.1 DATE

The date of this Agreement is **01/27/2024**.

### 1.2 TENANT(S)

The Tenant(s) herein is/are:

| Tenant Name | Tenant Email | Tenant Phone |
|---|---|---|
| Carmen Smith | smithcarmen8519@gmail.com | (470) 852-4920 |

If more than one person is named above as Tenant, all persons named shall have joint and several liability as to the obligations of Tenant herein, and all references to Tenant, although stated in the singular, shall apply as appropriate as if written in the plural.

The address of Tenant, for purposes of mailing notices is:
**5529 Swanson RD, Ellenwood, GA 30294**

### 1.3 LANDLORD

The Landlord herein is:

| Landlord Name | Landlord Email | Landlord Phone |
|---|---|---|
| Velonie Blake-Williams | velogblake@gmail.com | (347) 513-5294 |
| Alphonso Williams | alphonso.williams84@yahoo.com | (718) 413-8115 |

Landlord manages the Premises (as defined below) as the owner. Landlord is authorized to accept service of process, notices and demands.

The address of Landlord, for purposes of mailing payments and notices, is:
**5510 Martin Ct, Ellenwood, GA 30294**

### 1.4 RENTAL PROPERTY

The property herein, known as (the "Premises") is the structure or the part of a structure that is used as a home, residence, or sleeping place by the Tenant who maintains a household there.

| Property Address | Unit / Apt # | City | State | Zip |
|---|---|---|---|---|
| 5529 Swanson RD | | Ellenwood | GA | 30294 |

## 1.5 TERM

The Term herein shall be as follows:

Lease Start Date: **01/27/2024**

Lease Type:

- ☐ **Month-to-Month:** a month-to-month lease terminates by Landlord or Tenant giving the other Party (defined below) to this Agreement thirty days written notice
- ☒ **Fixed Term:** for a period ending on: **07/31/2024**

In the event Fixed Term is selected above, upon expiration of the Fixed Term, Landlord and Tenant (collectively known as "Parties", or individually as "Party") agree that the following shall occur by default:

- ☐ **Continue as Month-to-Month:** the lease shall automatically be renewed on a month-to-month basis.
- ☒ **Terminate:** the lease shall automatically terminate at the conclusion of the initial Fixed Term.

## 1.6 RENT

Rent for the Term hereof shall be payable, in advance, on or before 5pm on the 1st day of each month ("Due Date"), regardless of whether that day is a Saturday, Sunday, or Holiday, in equal installments of THREE THOUSAND, TWO HUNDRED ($3,200.00)

| Monthly Base Rent: | $3,200.00 |
|---|---|
| Additional Monthly Pet Rent: | N/A |
| Total Monthly Rent: | **$3,200.00** |

## 1.7 FORM OF RENT PAYMENTS

All payments shall be made to Landlord without demand at Landlord's mailing address such that they can be received on or before the Due Date. Landlord's acceptance of Rent from a person other than the Tenant shall not be a waiver of any right and shall not constitute acceptance of such person as a Tenant. All payments for Rent should be made via one of the following methods:

| Payments Allowed: | ☒ Cash<br>☐ Personal Check<br>☐ Cashier's Check<br>☐ Money Order<br>☒ ACH / Direct Deposit<br>☒ Rent Payments by TurboTenant |
|---|---|

Page 2 of 14

## 1.8 SECURITY DEPOSIT AND OTHER DEPOSITS

Upon the due execution of this Agreement, Tenant shall deposit with Landlord the following deposit amount(s):

| Security Deposit: | $3,200.00 |
|---|---|
| Pet Deposit: | N/A |
| Other Deposit: | N/A |

## 1.9 NONREFUNDABLE FEES

Upon the due execution of this Agreement, Tenant shall pay to Landlord the following non-refundable fee(s):

| Nonrefundable Fee(s): | N/A |
|---|---|

## 1.10 PRORATED RENT

Upon the due execution of this Agreement, Tenant shall pay to Landlord the following amount representing the amount due for the partial first month of the Term ("Prorated Rent"):

| Prorated Rent: | $516.13 |
|---|---|

## 1.11 UTILITIES AND OTHER SERVICES

Landlord and Tenant agree that Utilities and Other Services (listed below) will be the responsibility of, and paid for by, Tenant, in addition to Rent, as outlined below:

| Utility or Other Service | Responsibility |
|---|---|
| Electric | Tenant |
| Internet | Landlord |
| Phone | Tenant |
| Cable / Satellite | Tenant |
| Gas | Tenant |
| Water | Tenant |
| Sewer / Septic | N/A |
| Trash | Tenant |
| Lawn Care | Landlord |
| Snow Removal | Tenant |
| HOA or Condo Dues | Landlord |

Tenant's obligation to pay the above Utilities or Other Services shall include any and all seasonal fees, late fees, installation or connection fees and maintenance charges. Failure by Tenant to comply with the above responsibility for Utilities or Other Services will constitute a default to this Agreement and Landlord may terminate this Agreement. If Tenant fails to notify the service provider or does not assume responsibility of billing as of the Lease Start Date of this Agreement or cancels the Utilities or Other Services prior to the termination of this Agreement, which results in the account being billed to Landlord, Tenant's Utilities or Other Services will be paid and charged back to Tenant in addition to Rent.

## 1.12 ADDITIONAL OCCUPANTS

In addition to Tenant, the following individuals (if any) may occupy the Premises ("Additional Occupants"):

| Additional Occupant Name | Age | Relationship |
|---|---|---|
| Keshun Bankston | 11 | Son |
| Amani Smith | 14 | Daughter |

## 1.13 PETS

Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere on the Premises unless so authorized in writing.

    ☒ Tenant shall not bring, keep, "baby-sit", or maintain any pet on the Premises.

    ☐ This Agreement grants permission to Tenant to keep the below named pet(s), subject to the following:

| Type (dog, cat, etc.) | Breed | Weight (lbs) | Age (years) |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

Tenant agrees that Landlord has the right to request Tenant to remove a pet permanently from the Premises if pet becomes a nuisance, causes disturbances, or damages the Premises or personal property belonging to the Premises. Pets of guests are not allowed on the Premises.

## 1.14 SMOKING

The Premises are designated as a property where smoking is:

☐ Not Permitted

☐ Permitted

☒ Permitted Outdoors Only

For the purposes of clarifying and restricting its use, the term "Smoking" is defined to include the use of cigarettes, pipes, cigars, electronic vaporizing or aerosol devices, or other devices intended for the inhalation of tobacco, marijuana, or similar substances. Tenant understands and agrees that any damage caused by Smoking shall not constitute ordinary wear and tear. Landlord may deduct from the Security Deposit all damages and/or costs for the cleaning or repairing of any damage caused by or related to Smoking, including but not limited to: deodorizing the Premises, sealing and painting the walls and ceiling, and/or repairing or replacing the carpet and pads.

## 1.15 PARKING

Types of parking include garage, driveway and street.

Parking Rules

For the type of parking indicated, Tenant shall use such space exclusively for parking of Tenant's own passenger automobiles, and not for the washing, oil change or repair of vehicles. Parking space shall not be used for trucks or pickups in excess of 1 (one) ton, boats, recreational vehicles, storage, trailers, unlicensed, abandoned, or unregistered vehicles without prior permission from Landlord in writing. Tenant shall not park or allow any other person to park in any other space in the parking area. Landlord reserves the right to assign Tenant a different parking space or parking permit on 7 (seven) days notice to Tenant. Guests and invitees shall park on adjacent streets or in designated Guest Parking areas. Violators may be towed at vehicle owner's risk and expense.

## 1.16 TENANT INSURANCE

Landlord shall not insure Tenant for any personal injury or property damage. Tenant is:

☒ **Required to buy and maintain renters or liability insurance.** Tenant shall provide Landlord with evidence of required insurance prior to Tenant moving into Premises and upon request during the Term.

☐ **Not required to buy renters or liability insurance,** however it is strongly recommended to protect Tenant, Tenant's family, Tenant's invitees, and/or guests, and all personal property on the Premises and/or in any common areas from any and all damages.

## 1.17 KEYS

Tenant acknowledges receipt of the following keys:

| Key Type | Number of copies |
|---|---|
| Property | 2 |
| Garage Door Opener | 1 |

Tenant shall return these keys, garage door openers, and all copies made of these keys to Landlord upon termination of the Agreement. Tenant is responsible for the cost of rekeying if all keys are not returned upon vacating.

## 1.18 ADDITIONAL TERMS

The following Additional Terms (as defined below) will become a part of this Agreement and will supersede any conflicting terms of this Agreement:

**Additional Terms:**
No long term guest
No subletting
Allow access for maintenance and pest control with reasonable notice

**For consideration of Rent and adherence to the covenants in this Agreement by the Tenant, the Landlord leases to the Tenant the Premises for the Term.**

# 2. SPECIAL PROVISIONS

THE PARTIES FURTHER AGREE TO THE FOLLOWING SPECIAL PROVISIONS:

## 2.1 LATE RENT

Rent is due in full on the Due Date. If Rent is not received on or before 5 p.m. on the second day of each month, a late fee of ten percent (10%) of the unpaid Rent amount will be charged. All late fees shall be deemed additional rent for the month, and shall be paid and collected as such. Late fees will be assessed from the Due Date until the entire balance of unpaid Rent, accrued late fees, and any other charges are paid in full.

## 2.2 BAD CHECKS / NSF FEES

If a personal check or ACH draft is returned by Tenant's bank for any reason, a charge of twenty dollars ($20.00) shall be added to Rent for the month, and Tenant shall not be current with Rent as long as said charge is not paid. If Rent payment is late, or if Tenant's electronic or personal check is returned due to insufficient funds, uncollected or unpaid, Landlord may require that all subsequent payments be made by cashier's check or money order.

## 2.3 NOTICE TO TENANT

Notice to Tenant may be given in accordance with applicable law to the address of the Premises listed above, or to such other place as designated by Tenant in writing as the place for receipt of notices, or, in the absence of such designation, to Tenant's last known address.

## 2.4 SECURITY DEPOSIT PROVISIONS

Upon the due execution of this Agreement, Tenant shall deposit with Landlord a security deposit referenced in Section 1.8. Such deposit shall be returned to Tenant, and less any set-off for unpaid rent, unpaid late fees, unpaid utilities, damages, or any other money owing Landlord, following the notice requirements and timeframes, in accordance with the terms of this section and applicable laws. In the event that interest is earned on the security deposit, Landlord may keep the interest.

## 2.5 USE OF PREMISES / OCCUPANCY LIMITS

The Premises shall be occupied as a residence exclusively by the Tenant and the Additional Occupant(s). To the extent allowed by applicable law, Tenant shall comply with any and all laws, ordinances, rules, and orders of any and all governmental or quasi-governmental authorities affecting the upkeep, use, occupancy, and preservation of the Premises. To the extent allowed by applicable law, Tenant shall indemnify Landlord against, and reimburse Landlord for, any fines, charges, damages, costs, or fees, including reasonable attorney fees, incurred or paid by Landlord as a result of any noncompliance of the occupancy limits by Tenant. No person who is not a Tenant or Additional Occupant(s) may occupy the Premises, except that Tenant may allow one guest to stay with Tenant for a maximum period of fifteen (15) days every six (6) months, provided that such guest at all times maintains a separate residence. Any guest who stays in excess of this amount shall be considered an unauthorized occupant.

## 2.6 CONDITION OF PREMISES

Tenant acknowledges that prior to occupying the Premises, Tenant has examined the Premises and is satisfied with the condition, subject to those items specifically stated on the Property Condition Report (or like-titled document). By accepting possession of the Premises, Tenant acknowledges and agrees that no repairs or cleaning are required or requested. Tenant agrees and accepts the Premises "As Is" condition, and that no warranty or guarantees are expressed or implied by Landlord. In the event that not all Tenants can be present at the time of move-in, the acceptance of the condition by one or more than one Tenant(s) shall be sufficient as to establishing the condition at the start of the Term.

## 2.7 NOTIFICATION OF BUILDING PROBLEMS OR REPAIRS NEEDED

**Tenant shall keep the Premises in good order and condition, and immediately pay for any repairs caused by Tenant's negligence or misuse, that of their guests or Additional Occupant(s).** Tenant agrees to notify Landlord immediately upon first discovering any repairs or maintenance needed, or signs of serious building problems, including but not limited to: a crack in the foundation, a tilting porch, a crack in the plaster or stucco, moisture in the ceiling, buckling sheetrock or siding, a leaky roof, a spongy floor, any leaking or running water, appliance malfunction, and/or electrical shorting or sparks. Failure to report a problem may create a situation where the Tenant will be liable for damages due to the problem not being addressed sooner. Notwithstanding anything to the contrary in this Agreement, Landlord will pay for repairs of conditions that materially affect the health or safety of an ordinary resident (i.e., dangerous or hazardous conditions).

## 2.8 ENTRY/ACCESS TO PREMISES BY LANDLORD

Landlord shall have the right at all reasonable times during the term of this Agreement to enter the Premises for the purpose of inspecting and exhibiting the Premises and all buildings and improvements thereon. In non-emergency situations, Landlord will make a good faith effort to notify Tenant at least 24 hours prior to entry, and having made such good faith effort shall enter as necessary. In an emergency situation, or if a repair is requested by Tenant, Landlord is permitted to enter immediately without prior notice. Tenant understands that Landlord may show the Premises to prospective tenants, purchasers, or lenders at any time with proper notice. Landlord shall further have the right to display "for sale", "for rent", or "vacancy" signs in or about the Premises.

## 2.9 ABSENCES

Tenant is required to notify Landlord in writing of any anticipated absence from the Premises in excess of seven (7) days, and shall make arrangements for the Premises to be routinely checked on during absence. Such written notice must be provided no later than the first day of any such absence. Landlord may enter the Premises at any time for any reasonable purpose during Tenant's absence.

## 2.10 FAIR HOUSING

The federal Fair Housing Act prohibits discrimination based on race, color, national origin, religion, sex (including gender identity and sexual orientation), familial status and disability. All Parties to this Agreement shall act according to said law or any other classification protected by federal, state, or local law applicable in the jurisdiction where the Premises is located.

## 2.11 DAMAGE TO PREMISES

In the event the Premises are destroyed or rendered wholly untenable by fire, storm, or other casualty not caused by the negligence of Tenant, this Agreement shall terminate from such time except for the purpose of enforcing rights that may have then accrued hereunder. The Rent provided for herein shall then be accounted for by and between Landlord and Tenant up to the time of such injury or destruction of the Premises, Tenant paying Rent up to such date and Landlord refunding Rent collected beyond such date. Should a portion of the Premises thereby be rendered untenable, the Landlord shall have the option of either repairing such injured or damaged portion or terminating this Agreement. In the event that Landlord exercises its right to repair such untenable portion, the Rent shall abate in the proportion that the injured parts bears to the whole Premises, and such part so injured shall be restored by Landlord as speedily as practicable, after which the full Rent shall recommence and the Agreement continue according to the terms.

## 2.12 SECURITY DEVICES AND EXTERIOR DOOR LOCKS

Tenant shall not add or change any: lock, locking device, bolt or latch on the Premises without the express written consent of Landlord. All notices or requests by Tenant for: rekeying, changing, installing, repairing, or replacing security devices must be in writing. Installation of additional security devices or additional rekeying or replacement of security devices desired by Tenant will be paid by Tenant, in advance, and may only be installed by Landlord or Landlord's contractors after receiving a written request from Tenant.

## 2.13 UTILITIES AND OTHER SERVICES

Landlord is not responsible for any discomfort, inconvenience, or damage of any kind caused by the interruption or failure of any Utilities or Other Services. Landlord is not responsible for outages or lapses caused by outside providers or for Tenant's use thereof. Any billing methods described herein may be changed by Landlord by providing Tenant with thirty (30) days prior written notice, or by the minimum number of days as required by state and/or local law(s) (whichever is shorter), and Tenant acknowledges that in certain situations it is necessary to make a change to the billing method.

## 2.14 SMOKE / CARBON MONOXIDE DETECTORS

**Smoke and carbon monoxide (if applicable) detectors (hereinafter referred to collectively as "Detectors") have been installed at the Premises. Upon commencement of this Agreement, Landlord and Tenant have verified that the Detectors in the Premises are in good working order. Tenant agrees to keep the Detectors operational at all times and take no measures to render them non-operational or to diminish their effectiveness. Tenant agrees to perform the manufacturer's recommended test on Detectors and to report the failure of any such test, or any other apparent malfunction of the Detectors to Landlord immediately upon discovery in writing. Tenant acknowledges that the Detectors may be battery operated and agrees to replace the batteries, at Tenant's expense, promptly, as needed, for the duration of their stay at the Premises.**

## 2.15 FLOOD DISCLOSURE

Pursuant to the Official Code of Georgia Annotated, Landlord provides the following disclosure regarding the propensity for flooding at Premises:

- ☐ **Landlord has knowledge** of the fact that Premises is located in an area with a propensity of flooding as evidenced by the fact that Premises (including any portion of the living space covered by the lease or attachments thereto) have been damaged by a flood at least three times during the five-year period immediately preceding the date of the lease.

- ☒ **Landlord has NO knowledge** of the fact that the Premises is located in an area with a propensity of flooding.

For purposes of this section, flooding is defined as the inundation of a portion of the living space covered by the lease which was caused by an increased water level in an established water source such as a river, stream, or drainage ditch or as a ponding of water at or near the point where heavy or excessive rain fell.

# 3. GENERAL PROVISIONS

THE PARTIES FURTHER AGREE TO THE FOLLOWING GENERAL PROVISIONS:

## 3.1 ASSIGNMENT AND SUBLETTING

Tenant shall not assign this Agreement, or sublet or grant any license to use the Premises or any part thereof without the prior written consent of Landlord. Consent by Landlord to one such assignment, subletting, or license shall not be deemed to be consent to any subsequent assignment, subletting, or license. An assignment, subletting, or license without the prior written consent of Landlord or an assignment or subletting by operation of law shall be absolutely null and void and shall, at Landlord's option, terminate this Agreement.

## 3.2 ALTERATIONS AND IMPROVEMENTS

Tenant shall make no alterations to the buildings on the Premises or construct any building, or make any other improvements (including painting of any kind) on the Premises without the prior written consent of Landlord. Any and all alterations, changes, and/or improvements built, constructed, or placed on the Premises by Tenant shall, unless otherwise provided by written agreement between Landlord and Tenant, be and become the property of Landlord, and remain on the Premises at the expiration of this Agreement. Notwithstanding the foregoing, the Landlord may require the Tenant at Tenant's sole cost and expense, to remove such improvements at the expiration of this Agreement and return the Premises to its original condition at the commencement of this Agreement.

## 3.3 HAZARDOUS MATERIALS

Tenant shall not keep on the Premises any item of a dangerous, flammable, or explosive character that might unreasonably increase the danger of fire or explosion on the Premises, or that might be considered hazardous or extra hazardous by any responsible insurance company.

## 3.4 MOLD AND MILDEW DISCLOSURE

Prior to commencement of this Agreement, Landlord and Tenant have visually inspected the Premises and observed no visible mold or mildew, obvious water leaks, or presence of excess moisture conducive to mold growth, unless expressly noted on the Condition of Premises (or like-titled document). Landlord is not representing that a significant mold problem exists or does not exist on the Premises, as such a determination may only be made by a qualified inspector. Tenant agrees that it is their responsibility to hire a qualified inspector to determine if a significant mold problem exists or does not exist on the property. Tenant further acknowledges and agrees that Landlord, who has provided this section, is not liable for any action based on the presence of or propensity for mold in the property. Instead, Tenant must promptly notify Landlord in writing of a condition that poses a hazard to property, health, or safety. Landlord will take appropriate action to comply with applicable law, subject to any exceptions for natural disasters and other casualty losses.

## 3.5 LEAD-BASED PAINT DISCLOSURE AND WARNING STATEMENT

Housing built prior to 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposures are especially harmful to children and pregnant women. Before renting pre-1978 housing, Landlord must disclose any known presence of lead-based paint, lead-based paint hazards, and/or records or reports of lead-based paint in the dwelling. Tenant must also receive a federally-approved pamphlet on lead poisoning prevention.

## 3.6 MODIFICATION

This Agreement shall not be modified, changed, altered, or amended in any way except through a written amendment signed by all of the Parties hereto.

## 3.7 CREDIT REPORTING DISCLOSURE

Tenant is hereby notified that a negative credit report statement may be submitted to a credit reporting agency if Tenant fails to fulfill the terms of this Agreement.

## 3.8 MILITARY PERSONNEL CLAUSE / FAMILY VIOLENCE / SEX OFFENSES OR STALKING

The federal Servicemembers Civil Relief Act allows a Tenant to terminate this Agreement, under certain circumstances, if they enlist, are moved, or are drafted or commissioned in the U.S. Armed Forces. Tenants may have additional rights, under state or local laws, to terminate this Agreement early in certain situations involving family violence, certain sexual offenses, or stalking. All Parties to this Agreement shall act according to any such federal, state, or local law applicable in the jurisdiction where the Premises is located.

## 3.9 MATERIALITY OF APPLICATION TO RENT

All representations made by Tenant on the application (or like-titled document) (defined as "Application to Rent") are material to the grant of this Agreement, and the Agreement is granted only on the condition of the truthfulness and accuracy of said representations. If a failure to disclose or lack of truthfulness is discovered on said Application to Rent, Landlord may deem Tenant to be in breach of this Agreement and shall be good cause for termination.

## 3.10 SUBORDINATION OF LEASE

This Agreement and Tenant's interest hereunder are, and shall be, subordinate, junior, and inferior to any and all mortgages, liens, or encumbrances now or hereafter placed on the Premises by Landlord, all advances made under any such mortgages, liens, or encumbrances (including, but not limited to, future advances), the interest payable on such mortgages, liens, or encumbrances and any and all renewals, extensions, or modifications of such mortgages, liens, or encumbrances.

## 3.11 CHOICE OF LAW

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF GEORGIA. All Parties to this Agreement, including Third Party Guarantors, if any, expressly consent to the venue of the courts of the county in which the Premises is located.

## 3.12 SURRENDER OF PREMISES

Upon the expiration of the Term hereof, Tenant shall surrender the Premises in as good a state and condition as they were at the commencement of this Agreement, reasonable use and wear and tear thereof excepted. For purposes of this Agreement, Tenant has "surrendered" the Premises when: (i) the move-out date has passed and no one is living in the Premises in Landlord's reasonable judgment; or (ii) the keys and access devices listed in this Agreement have been turned in to Landlord, whichever happens first. Surrender, abandonment, or judicial eviction ends Tenant's right of possession for all purposes, and gives Landlord the immediate right to clean up, make repairs in, and relet the Premises; determine any Security Deposit deductions; and remove property left in the Premises.

## 3.13 QUIET ENJOYMENT

Tenant, upon payment of all of the sums referred to herein as being payable by Tenant, and Tenant's performance of all Tenant's agreements contained herein, and Tenant's observance of all rules and regulations, shall and may peacefully and quietly have, hold, and enjoy said Premises for the term hereof.

## 3.14 COMPLIANCE WITH LAWS

Tenant shall not violate any law or ordinance (federal, state, or local), or commit or permit any waste or nuisance in or about the Premises, or in any way annoy any other person residing within three hundred (300) feet of the Premises. Such actions shall be a material and irreparable violation of the Agreement and good cause for termination of Agreement.

## 3.15 ABANDONMENT

If at any time during the Term Tenant abandons the Premises, Landlord may, at Landlord's option, obtain possession of the Premises in the manner provided by law, and without becoming liable to Tenant for damages or for any payment of any kind whatever. Landlord may, at Landlord's discretion, as agent for Tenant, relet the Premises, or any part thereof, for the whole or any part thereof, for the whole or any part of the then unexpired Term, and may receive and collect all Rent payable by virtue of such reletting, and, at Landlord's option, hold Tenant liable for any difference between the Rent that would have been payable under this Agreement during the balance of the unexpired Term, if this Agreement had continued in force, and the net Rent for such period realized by Landlord by means of such reletting. If Landlord's right of reentry is exercised following abandonment of the Premises by Tenant, then Landlord shall consider any personal property belonging to Tenant and left on the Premises to also have been abandoned, in which case Landlord may dispose of all such personal property in accordance with applicable law, and Landlord is hereby relieved of all liability for doing so. For purposes of this Agreement, Tenant has "abandoned" the Premises when all of the following have occurred: (i) Tenant appears to have moved out in Landlord's reasonable judgment; (ii) clothes, furniture, and personal belongings have been substantially removed in Landlord's reasonable judgment; (iii) Tenant has been in default for nonpayment of Rent for five (5) consecutive days, or water, gas, or electric service for the Premises not connected in Landlord's name has been terminated or transferred; and (iv) Tenant has not responded for two (2) days to Landlord's notice left on the inside of the main entry door stating that Landlord considers the Premises abandoned. The Premises is also considered abandoned ten (10) days after the death of a sole Tenant.

## 3.16 NO REPRESENTATIONS

Tenant acknowledges that Landlord has not made any representations, written or oral, concerning the safety of the community or the effectiveness or operability of any security devices or security measures. Tenant acknowledges that Landlord does not warrant or guarantee the safety or security of Tenant or his or her guests or invitees against the criminal or wrongful acts of third parties. Each Tenant, guest, invitee and Additional Occupant(s) is responsible for protecting his or her own person and property.

## 3.17 ATTORNEY / COLLECTION FEES

To the extent allowed under applicable law, should it become necessary for Landlord to employ an attorney to enforce any of the conditions or covenants hereof, or a collection company to recover any financial loss, including the collection of Rent or gaining possession of the Premises, Tenant agrees to pay all related legal and/or collection expenses so incurred.

## 3.18 SEVERABILITY

If any provision of this Agreement or the application thereof shall, for any and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities, or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

## 3.19 TIME

Time is of the essence to the terms of this Agreement.

## 3.20 INDEMNIFICATION

To the maximum extent permitted under applicable law, Landlord shall not be liable for any damage or injury of or to the Tenant, Tenant's family, Additional Occupant(s), guests, invitees, agents, or employees, or to any person entering the Premises or the building of which the Premises are a part or to goods or equipment, or in the structure or equipment of the structure of which the Premises are a part, and Tenant hereby agrees to indemnify, defend, and hold Landlord harmless from any and all claims or assertions of every kind and nature.

## 3.21 DESCRIPTIVE HEADINGS

The descriptive headings used herein are for convenience of reference only, and they are not intended to have any effect whatsoever in determining the rights or obligations of the Landlord or Tenant.

## 3.22 NON WAIVER

No indulgence, waiver, election, or non-election by Landlord under this Agreement shall affect Tenant's duties and liabilities hereunder.

## 3.23 ENTIRE AGREEMENT

The foregoing Agreement constitutes the entire Agreement between the Parties and supersedes any online, oral, or written representations or agreements that may have been made by either Party. Further, Tenant represents that he or she has relied solely on his or her own judgment, experience, and expertise in entering into this Agreement with Landlord.

## 4. SIGNATURES

THE TENANT UNDERSTANDS THAT THE EXECUTION OF THIS AGREEMENT ENTAILS AN IMPORTANT DECISION THAT HAS LEGAL IMPLICATIONS. TENANT IS ADVISED TO SEEK HIS OR HER OWN COUNSEL, LEGAL OR OTHERWISE, REGARDING THE EXECUTION OF THIS AGREEMENT. TENANT HEREBY ACKNOWLEDGES THAT HE OR SHE HAS READ THIS AGREEMENT, UNDERSTANDS IT, AGREES TO IT, AND HAS BEEN GIVEN A COPY. ELECTRONIC SIGNATURES MAY BE USED TO EXECUTE THIS AGREEMENT. IF USED, THE PARTIES ACKNOWLEDGE THAT ONCE THE ELECTRONIC SIGNATURE PROCESS IS COMPLETED, THE ELECTRONIC SIGNATURES ON THIS AGREEMENT WILL BE AS BINDING AS IF THE SIGNATURES WERE PHYSICALLY SIGNED BY HAND.

WITNESS THE SIGNATURES OF THE PARTIES TO THIS AGREEMENT:

TENANT(S):

Name: Carmen Smith    Sign: *Carmen Smith*    Date: 01 / 27 / 2024

LANDLORD(S):

Name: Velonie Blake-Williams    Sign: *Velonie Blake-Williams*    Date: 01 / 27 / 2024

Name: Alphonso Williams    Sign: *Alphonso Williams*    Date: 01 / 27 / 2024

Exhibit 'B'

# Payments

OVERVIEW    **CHARGES**    DEPOSITS

## Sent Charges

🔑 Rentals    🏷️ All Leases    👤 All Categories    💲 All Statuses    📅 All Time

RECORD PAYMENT    CREATE CHARGE

↗ EXPORT

### June 2024    TOTAL: **$3,520.00**

| DUE DATE | CATEGORY | LEASE | STATUS | DEPOSIT | |
|---|---|---|---|---|---|
| 06/01/2024 | 🔄 Rent | 5529 Swanson RD | PAST DUE | | **$3,200.00** Due: $3,200.00 ⌄ |
| 06/03/2024 | 🔄 Late Fee | 5529 Swanson RD | UNPAID | | **$320.00** Due: $320.00 ⌄ |

### May 2024    TOTAL: **$3,520.00**

| DUE DATE | CATEGORY | LEASE | STATUS | DEPOSIT | |
|---|---|---|---|---|---|
| 05/03/2024 | 🔄 Late Fee | 5529 Swanson RD | PAST DUE | | **$320.00** Due: $320.00 ⌄ |

6/3/24, 8:09 PM
https://rental.turbotenant.com/owners/payments/charges
2/3

My Payments - TurboTenant

## April 2024

| DUE DATE | CATEGORY | LEASE | STATUS | DEPOSIT | |
|---|---|---|---|---|---|
| 05/01/2024 | ↻ Rent | 5529 Swanson RD | PAST DUE | | $3,200.00<br>Due: $3,200.00 ⌄ |
| 04/03/2024 | ↻ Late Fee | 5529 Swanson RD | PAST DUE | | $320.00<br>Due: $320.00 ⌄ |
| 04/01/2024 | ↻ Rent | 5529 Swanson RD | PAST DUE | | $1,200.00<br>Due: $1,200.00 ⌄ |

TOTAL: **$1,520.00**

## March 2024

| DUE DATE | CATEGORY | LEASE | STATUS | DEPOSIT | |
|---|---|---|---|---|---|
| 03/03/2024 | ↻ Late Fee | 5529 Swanson RD | PAID | | $320.00<br>Due: $0.00 ⌄ |

TOTAL: **$3,520.00**

6/3/24, 8:09 PM

https://rental.turbotenant.com/owners/payments/charges

3/3

My Payments - TurboTenant

| DUE DATE | CATEGORY | LEASE | STATUS | DEPOSIT | |
|---|---|---|---|---|---|
| | | Carmen Smith<br>Paid on 04/05/2024 | 💵 Paid via Cash - DELETE | | $320.00 ↙ RECEIPT |

A past due reminder was sent to your tenant(s) on March 07, 2024.